Opinion issued August 31, 2006 
 









In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00866-CR




HAROLD MANNING, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 182nd District Court
Harris County, Texas
Trial Court Cause No. 960731




MEMORANDUM OPINION

          A jury convicted appellant, Harold Manning, of capital murder, and the trial
court assessed his punishment at life in prison. The State did not seek the death
penalty. See Tex. Pen. Code Ann. § 19.03(a)(2) (Vernon 2003). We determine (1)
whether the trial court erred in allowing the State to question a panel of prospective
jurors on the law of parties; (2) whether the trial court erred in giving a jury charge
that included the law of parties; and (3) whether the evidence was legally sufficient
to support the conviction. We affirm. 
Background
          On the night of November 25, 2002, at approximately 11:40 p.m., Pasadena
Police Department (“PPD”) Officer Chris Sadler responded to a priority call at a
townhome in the East District of Pasadena. Upon finding the townhome’s front door
wide open, Officer Sadler discovered a man—later identified as James “Jimmy”
Wilson—lying on his stomach in a four-to-five-foot-wide pool of blood. One of the
townhome’s three residents—later identified as Diana Sanchez—was attempting to
hold Wilson up out of the pool of blood and was yelling for help. A second
victim—later identified as Randal Ainsworth and also one of the townhome’s three
residents—was found dead in the kitchen area.
          As Officer Sadler entered the residence, he saw Albert Mata—Sanchez’s
boyfriend and one of the townhome’s three residents—and Glen Kuykendall, a friend
of Ainsworth’s, attempting to flee the residence out of a back door. Both men were
detained before they could leave the scene. It was learned that, upon finding
Ainsworth’s deceased body in the townhome, Sanchez and Mata had immediately left
because they were uncertain if the perpetrators were still inside the residence. After
leaving, they went to a nearby store to call Kuykendall. Sanchez and Mata then
returned to the townhome where they discovered Wilson alive. Sanchez rendered
assistance to Wilson while Mata called “9-1-1.” At some point, Kuykendall arrived
to offer assistance. The police arrived approximately 15 to 20 minutes after Sanchez
had entered the townhome. Both Wilson and Ainsworth were found bound with duct
tape around their wrists, head, and mouth. Wilson was later loaded onto a helicopter
and life-flighted to receive medical care. He had suffered a slashed neck and 19 stab
wounds. As a result of these injuries, Wilson underwent surgery to retrieve a piece of
a metal knife that had been left in his body, as well as to repair the lining around his
spinal cord. Ainsworth’s autopsy revealed that he died from multiple sharp-force
injuries.
          Earlier on the night of the murder, Wilson had gone to the East Pasadena
townhome to watch television and to smoke marihuana. While there, he saw appellant
negotiate to purchase 10 pounds of marihuana from Ainsworth. After the deal was
complete, appellant left, and Wilson and Ainsworth went to eat at a nearby restaurant. 
Shortly after Wilson and Ainsworth had returned to the townhome, appellant re-entered the townhome with a gun and ordered Wilson to lie on the dining-room floor. 
Appellant then began questioning Ainsworth as to the location of money and
marihuana. Ainsworth directed appellant to an upstairs closet. Appellant then went
upstairs twice and, on the second trip down, was carrying bags of marihuana.
 
          During this sequence of events, there was a second, unidentified intruder who
stood to Wilson’s left as Wilson lay on his stomach in the dining room. Because
Wilson could not see the intruder’s face and because the intruder did not speak,
Wilson was unable to identify him or her. At that point, Wilson’s throat was cut; two
people, whose faces Wilson could not see, taped him up; and, after having lain taped
up for a few minutes, Wilson heard one of the two intruders say, “Let me do this white
boy.” Wilson then felt someone straddle his back, punch him in the back of the head,
and, finally, Wilson felt a tingling sensation across his whole body. 
          Two days prior to Ainsworth’s murder, Ainsworth and his neighbor had been
returning from buying groceries when they encountered appellant waiting outside of
Ainsworth’s townhome. Appellant told Ainsworth that he was “slipping,” that he
needed to watch himself because he had been leaving his townhome unlocked, and
that somebody could get him. 
          At some point in November of 2002—the month of the murder—appellant told
his girlfriend, Laveka Montresse McNeil, that he wanted to rob Ainsworth and Mata. 
Appellant even admitted to contacting his co-conspirator, an individual known as
“D.D.” or “D.Lo.,” in order to enlist his assistance with the robbery. On the night of
the murder, prior to the robbery, appellant and his co-conspirator gathered several
items in preparation for the robbery, including duct tape, a gun, a knife, and black
clothing. After having left his residence with these items and having been gone for
three hours, appellant and his coconspirator returned to appellant’s residence at
approximately 1:00 a.m. with 40 pounds of marihuana, which they divided among
themselves. 
          Perhaps the most damaging evidence against appellant came from appellant’s
own girlfriend, McNeil, who testified that on the day after the murder, while she and
appellant were watching the news on television, a story came on regarding a murder
and robbery in which one of the victims had been life-flighted to the hospital to
receive medical care. McNeil testified that appellant, in reaction to this news story,
declared, “Damn, he lived.” 
                    
           At the conclusion of the evidence, the jury was instructed on three theories of
capital murder:
     [I]f you find from the evidence beyond a reasonable
doubt that . . . the defendant, Harold Manning, did then and
there unlawfully, while in the course of committing or
attempting to commit the robbery of Randal Ainsworth,
intentionally cause the death of Randal Ainsworth by
stabbing Randal Ainsworth with a deadly weapon, namely
a knife;


 or 
 
     [i]f you find from the evidence beyond a reasonable
doubt that . . . [co-conspirator], did then and there
unlawfully, while in the course of committing or
attempting to commit the robbery of Randal Ainsworth,
intentionally cause the death of Randal Ainsworth by
stabbing [him] with a deadly weapon, namely a knife, and
that the defendant, Harold Manning, with the intent to
promote or assist the commission of the offense, if any,
solicited, encouraged, directed, aided or attempted to aid
Darian Sam [the co-conspirator] to commit the offense, if
he did;


 or
 
     [i]f you find from the evidence beyond a reasonable
doubt that the defendant, Harold Manning, and [co-conspirator] entered into an agreement to commit the
felony offense of robbery of Randal Ainsworth, and
pursuant to that agreement, if any, they did carry out their
conspiracy and . . . while in the course of committing such
robbery of Randal Ainsworth, Darian Sam intentionally
caused the death of Randal Ainsworth by stabbing [him]
with a deadly weapon, namely a knife, and the murder of
Randal Ainsworth was committed in furtherance of the
conspiracy and was an offense that the defendant should
have anticipated as a result of carrying out the conspiracy,



then you will find the defendant guilty of capital murder,
as charged in the indictment. 
 
The jury found appellant guilty of capital murder “as charged in the indictment.”
 
 
 
Voir Dire on Law of Parties 
 
In his first point of error, appellant argues that he “was denied a fair jury and
therefore due process when the trial court allowed the State to void [sic] dire the jury
and exclude potential jurors on an improper theory for conviction on the law of
parties.” Appellant argues that three venire members, jurors 4, 18, and 24, were
improperly excused by the trial court, over appellant’s objections, because they could
not follow the law under the hypothetical law-of-parties scenario that was improperly
presented by the State. Appellant contends that the State’s instructing the venire
members that if the hypothetical defendant should have anticipated the murder, then
he should be convicted of capital murder was in error because the hypothetical
defendant did not intend for the murder to occur. Appellant further argues that he
demonstrated for the record that he would have accepted the three excluded jurors had
the trial court not overruled his objections. We construe appellant’s argument to be
that (1) the State’s hypothetical law-of-parties scenario—a bank robbery during which
a murder occurs—and subsequent questions were legally incorrect because they
indicated that the jury could convict appellant even if appellant did not himself
specifically intend to kill Ainsworth and (2) the trial court erred in excusing the three
potential jurors based on the jurors’ refusal to follow the law of parties as presented
in the State’s defective hypothetical. We will not disturb the trial court’s decisions
regarding the propriety of voir dire questioning absent an abuse of discretion. See
Sells v. State, 121 S.W.3d 748, 755 (Tex. Crim. App. 2003).
The complained-of hypothetical presented by the State attempted to illustrate
section 7.02(b), also known as the conspiracy theory of the law of parties. See Tex.
Pen. Code Ann. § 7.02(b). Appellant misreads section 7.02(b) as requiring appellant
to specifically intend to kill Ainsworth before being capable of being convicted for
capital murder. This is incorrect. Section 7.02(b) does not require that a defendant
have the intent, or mens rea, to kill the victim in order to be convicted of capital
murder. See Ruiz v. State, 579 S.W.2d 206, 209 (Tex. Crim. App. 1979). Rather,
section 7.02(b) permits a defendant, “though having no intent to commit [capital
murder],” to be convicted of capital murder where one occurs in furtherance of a
conspiracy to carry out a different felony and the defendant should have anticipated
that the murder would occur. Tex. Pen. Code Ann. § 7.02(b). In addition, the Court
of Criminal Appeals has consistently allowed the application of section 7.02(b) to the
offense of capital murder. See Fuller v. State, 827 S.W.2d 919, 932–33 (Tex. Crim.
App. 1992); Montoya v. State, 810 S.W.2d 160, 165 (Tex. Crim. App. 1989). The
State’s hypothetical scenario and subsequent questions on the law of parties, which
lacked a mens-rea element to commit murder, were therefore not in error.
Moreover, because the State’s voir dire on the law of parties was not improper,
the State was entitled to perform this questioning to discover potential “bias or
prejudice” against the law of parties because the law of parties is a “phase of the law
upon which the State is entitled to rely for conviction or punishment.” Tex. Code
Crim. Proc. Ann. art. 35.16(b)(3) (Vernon Supp. 2005). Each of the three venire
members affirmatively and unequivocally indicated that he or she could not follow the
law of parties. See Brown v. State, 913 S.W.2d 577, 580–81 (Tex. Crim. App. 1996)
(holding that when venire person vacillates in his or her ability to follow law,
reviewing court is bound by trial court’s judgment). The applicable standard at the
trial court for a juror’s exclusion is whether the juror’s views would “prevent or
substantially impair” his performance. Nichols v. State, 754 S.W.2d 185, 197 (Tex.
Crim. App. 1988) (quoting Wainwright v. Witt, 469 U.S. 412, 420, 105 S. Ct. 844, 850
(1985)). Affirmatively indicating that one cannot follow the law meets this standard. 
See id. (upholding trial court’s exclusion of venire member who stated he could not
follow law of parties); Phillips v. State, 701 S.W.2d 875, 883–84 (Tex. Crim. App.
1985) (upholding trial court’s granting of State’s challenge of venire member where
venire member stated that he could not find non-trigger person guilty of capital
murder). We hold that the State’s voir dire regarding the law of parties was not in
error and that the trial court did not abuse its discretion in excusing the potential
jurors. 
We overrule appellant’s first point of error.
 
Jury Charge on Conspiracy Theory of the Law of Parties 
In his second point of error, appellant argues that “the trial court committed
reversible error by giving the jury a charge allowing conviction on a conspiracy theory
of the law of parties which did not include the statutorily imposed intent to commit
murder which denied appellant a fair trial and due process.” We will construe
appellant’s argument to be (1) that the trial court’s jury charge was in error because
it did not include the alleged requirement that appellant have specifically intended to
commit murder and (2) that section 7.02(b) is unconstitutional as applied to capital
murder.
A.                          Jury Charge Error 
When we review a jury charge for error, we must determine (1) whether error
actually exists in the jury charge and (2) whether sufficient harm resulted from the
error to require reversal. See Abdnor v. State, 871 S.W.2d 726, 731–32 (Tex. Crim.
App. 1994). When, as here, a timely objection is made to the jury charge at trial, we
will not reverse for an erroneous jury charge unless we find “some” actual, rather than
theoretical, harm as a result. See Reyes v. State, 938 S.W.2d 718, 723 (Tex. Crim.
App. 1996); Arline v. State, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986). 
Our review of the record shows that the trial court correctly charged the jury on
the conspiracy theory of the law of parties as found in section 7.02(b) despite the
charge’s lacking a mens rea element to commit murder. The law of parties, as applied
in this case, makes it unnecessary to show the intent to commit the murder and instead
allows a conviction of capital murder when the murder occurs in furtherance of a
conspiracy to carry out a different felony and the defendant should have anticipated
that the murder would occur. See Tex. Pen. Code Ann. § 7.02(b); Ruiz, 579 S.W.2d
at 209 (“Section 7.02(b) eliminates any necessity on the part of the State to prove the
appellant had any intent to kill [the victim].”). When instructing the jury regarding
this law, all that is required is that the appropriate portions of the jury charge track the
language of section 7.02(b). Solomon v. State, 49 S.W.3d 356, 368 (Tex. Crim. App.
2001). The trial court’s jury instruction properly did this. 
Appellant’s argument is not novel. In Hanson v. State, 55 S.W.3d 681, 697–98
(Tex. App.—Austin 2001, pet. ref’d), the appellant took a similar position and argued
that a general statute, such as the law of parties, which does not require that the mens
rea to commit murder be proved, cannot overrule a specific statute, such as the capital
murder statute, which does require that the mens rea to commit murder be proved.


 
Our sister court overruled this argument, holding that the two statutes—sections
7.02(b) and 19.03(a)(2)—need not be harmonized because they do not have the same
purpose or object. Id. We agree. These two statutes do not have the same elements
of proof and serve different purposes. Id. at 698. Section 7.02(b) defines party
liability, liability that can attach to any number of offenses committed by a co-conspirator. Id. Section 19.03(a)(2), on the other hand, defines the offense of capital
murder and addresses the responsibility created by one’s own actions. Id. Sections
7.02(b) and 19.03(a)(2) are not in pari materia and appellant’s argument that he was
erroneously convicted based on an improper jury charge that did not include the
alleged element of mens rea to commit murder is without merit.
B.                           Constitutionality of Law of Parties 
In support of what we construe as his constitutional challenge to the law of
parties, appellant cites authority that holds that a defendant must be found to have
intended death to result from his conduct before a defendant can be found guilty of
capital murder. This argument implies that the law of parties is unconstitutional as
applied to the offense of capital murder because it can allow a defendant to be
convicted of capital murder without a showing that he specifically intended that death
result. 
In Cienfuegos v. State, 113 S.W.3d 481, 493–94 (Tex. App.—Houston [1st
Dist.] 2003, pet. ref’d), this Court held that section 7.02(b) does not dispense with the
requirement of a culpable mental state in regard to a capital murder conviction under
the law of parties. Rather, section 7.02(b) requires the State to show that the defendant
had both the mens rea to engage in a conspiracy and the culpable mental state to
commit the underlying felony (i.e., the intended felony). Id. The mental state required
for the underlying felony supplies the mens rea for the felony actually committed by
the co-conspirator. Id. Thus, section 7.02(b) does not violate the Due Process Clause
of the Fourteenth Amendment or Article I, Section 19 of the Texas Constitution. Id.
at 494.
We overrule appellant’s second point of error.
 
Legal Sufficiency
 
In his third point of error, appellant argues that “the evidence was legally
insufficient to establish that [he] intentionally committed the murder in the course of
committing or attempting to commit a robbery as alleged in the indictment.” 
In considering a legal-sufficiency challenge, we review the relevant evidence
in the light most favorable to the jury’s verdict and determine whether any rational
trier of fact could have found the essential elements of the crime beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Johnson
v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). We measure evidentiary sufficiency
against the elements of the offense as defined by the hypothetically correct jury
charge. Malik v. State, 953 S.W.2d 234, 239–40 (Tex. Crim. App. 1997). When, as
here, the jury charge given comports with the hypothetically correct jury charge, we
will measure the sufficiency of the evidence against the elements of the offense as
defined in the jury charge actually given. 
As stated above, section 7.02(b) allows a conspirator, “though having no intent
to commit it,” to be found guilty of capital murder, if the murder is “committed [by
another conspirator] in furtherance of the unlawful purpose and was one that should
have been anticipated as a result of the carrying out of the conspiracy.” Tex. Pen.
Code Ann. § 7.02(b) (emphasis added). The charge tracked this theory of the law of
parties. Again, the State did not have to prove that appellant intentionally murdered
Ainsworth in order for appellant to be convicted of capital murder under section
7.02(b); appellant’s contention to the contrary is simply incorrect. See Ruiz, 579
S.W.2d at 209. Rather, to convict appellant as a party under section 7.02(b), the State
was required to show that (1) appellant conspired with others to commit an aggravated
robbery; (2) one of the co-conspirators, and not an independent party, committed the
murder; (3) the co-conspirator intentionally or knowingly committed the murder; (4)
it was the co-conspirator’s acts that caused the death of an individual; (5) the murder
was committed in the course of committing, or attempting to commit, the aggravated
robbery; (6) the murder was committed in furtherance of the unlawful purpose of the
conspiracy; and (7) appellant should have anticipated the murder as a result of
carrying out the conspiracy. See id..
Viewed in the light most favorable to the verdict, the evidence established that
appellant wanted to rob Ainsworth and Mata of their marihuana; that appellant
enlisted a co-conspirator’s help to assist with the robbery; that appellant and his co-conspirator gathered a knife, duct tape, a gun, and black clothing in preparation for the
robbery; that appellant entered Ainsworth’s townhome with a gun and a knife on the
night of the murder; that Ainsworth was stabbed at least 19 times and died as a result;
that on the night of the murder, appellant returned to his residence with approximately
40 pounds of marihuana after having been gone for three hours; and that appellant was
shocked to learn, as evidenced by his declaring, “Damn, he lived,” from the news
program that Wilson had survived his attack. The jury could reasonably infer from
this evidence that appellant should have anticipated that someone, be it himself or his
co-conspirator (a distinction that is irrelevant under section 7.02(b)), would
intentionally or knowingly cause someone’s death in furtherance of the robbery. See
Tex. Pen. Code Ann. § 7.02(b) (providing that “all conspirators are guilty of the
felony actually committed”); Holiday v. State, 14 S.W.3d 784, 789–90 (Tex.
App.—Houston [1st Dist.] 2000, pet. ref’d) (holding that, when defendant conspired
with others to commit car theft, took rifle to commit theft, and wrestled with victim,
jury could infer that defendant should have anticipated that co-conspirator would
commit murder in furtherance of robbery); see also Simmons v. State, 594 S.W.2d 760,
764–65 (Tex. Crim. App. 1980) (holding that appellant should have anticipated
murder would result while carrying out robbery conspiracy where evidence established
that, days prior to murder, appellant had discussed robbing, beating, and stabbing
victim).
Appellant cites Ibanez v. State, 749 S.W.2d 804, 807 (Tex. Crim. App. 1986),
for the proposition that “[a] killing and unrelated taking of property do not constitute
capital murder under 19.03(a)(2): the State must prove a nexus between the murder
and the theft, i.e. that the murder occurred in order to facilitate the taking of the
property.” Appellant’s reliance on Ibanez is misplaced. In Ibanez, a man was
strangled in his residence by another man whom the victim had met earlier that
evening. Id. at 806. There was no evidence of forced entry, or a struggle, nor did
there appear to be a robbery because valuable gold jewelry was found on the victim
when he was discovered by his maid. Id. The accused admitted to killing the victim 
intentionally and to taking the victim’s vehicle because he was scared and wanted to
get away, but he denied taking any other property. Id. The Court of Criminal Appeals
reversed the accused’s capital murder conviction because the State had failed to prove
that the accused had intentionally strangled the victim with the intent to obtain control
of the deceased’s property. Id. at 807–08. 
Ibanez is distinguishable. The evidence in Ibanez established that the accused’s
taking of the victim’s vehicle was incidental to the strangulation of the victim. That
is, in Ibanez, the accused took the victim’s property out of anger and fear only after
having committed the act that caused the victim’s death. The killing of the victim in
Ibanez was not done “in order to ‘obtain and maintain control of the deceased’s car’”
and thus was not a robbery. Id. at 807. This required that the defendant’s capital
murder conviction be reversed. Id. at 807–08; see also Tex. Pen. Code Ann.
§ 29.02(a) (Vernon 2003) (robbery statute). In the present case, viewed in the proper
light, the evidence establishes that Ainsworth’s killing was done to facilitate the taking
of the marihuana and was not incidental to it. That is, unlike the purpose of the
defendant in Ibanez, appellant’s purpose in going to Ainsworth’s townhome on the
night of the murder was to rob him. These distinctions make Ibanez inapplicable to
this case.
Based on the foregoing evidence, we hold that the evidence was legally
sufficient to support appellant’s conviction of capital murder under section 7.02(b). 
Based on our holding, we need not determine whether legally sufficient evidence
showed that appellant intentionally caused the death of Ainsworth under section
19.03(a)(2), or that appellant solicited, encouraged, directed, aided, or attempted to aid
a co-conspirator under section 7.02(a)(2). See Tex. Pen. Code Ann. §§ 7.02(a)(2),
19.03(a)(2); Rabbani v. State, 847 S.W.2d 555, 558 (Tex. Crim. App. 1992) (“[W]hen
the jury returns a general verdict and the evidence is sufficient to support a guilty
finding under any of the allegations submitted, the verdict will be upheld.”).
We overrule appellant’s third point of error.Conclusion
We affirm the judgment of the trial court. 
 
 
 
 
Tim Taft
Justice
 
Panel consists of Chief Justice Radack and Justices Taft and Nuchia.
 
Do not publish. Tex. R. App. P. 47.2(b).