Efran Castro IBANEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 69330.

Court of Criminal Appeals of Texas, En Banc.

June 11, 1986.

Rehearing Denied May 11, 1988.

---

Scott E. Segall, El Paso, for appellant.

Steve W. Simmons, Dist. Atty. and Matthew Dekoatz, Karen Shook and Robert Dinsmoor, Asst. Dist. Attys., El Paso, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

CAMPBELL, Judge.

Appeal is taken from a conviction for capital murder. V.T.C.A. Penal Code, § 19.03(a)(2). After finding appellant guilty, the jury returned affirmative findings to the special issues under Art. 37.071, V.A.C.C.P. Punishment was assessed at death. We will reverse and enter a judgment of acquittal of capital murder.

Appellant was convicted of intentionally and knowingly causing the death of William Morris in the course of committing the offense of robbery. Appellant raises six grounds of error. In view of our finding that the evidence introduced by the State is insufficient to support a conviction for capital murder, we need only reach ground of error three.[1]

In ground of error three appellant complains that the trial court erred in not directing a verdict of acquittal on capital murder. Appellant asserts that the trial court should have granted a directed verdict because: the State failed to disprove exculpatory matter contained within appellant's confession which was offered by the State in its entirety during the guilt/innocence phase of the trial; secondly, the evidence adduced at trial, including the entire confession, at most proves a murder and an unauthorized use of a vehicle. The State in its brief urges that the confession was not exculpatory and argues it has proven its case.

Appellant was charged by indictment with having intentionally and knowingly caused the death of William Morris in the course of committing robbery, the alleged object of the robbery being the decedent's car.[2]

---

1. Appellant, having elected to proceed pro se after the filing of a brief by court appointed counsel, has filed a brief raising several other alleged errors. Due to our disposition of ground of error three, we also do not reach the errors complained of in appellant's pro se brief.

2. The indictment in pertinent part alleged:
   [i]ntentionally and knowingly cause the death of an individual, WILLIAM MORRIS, by strangling the said WILLIAM MORRIS; and the said [appellant] did then and there intentionally cause the death of [decedent] in the

The State's evidence, viewed in the light most favorable to the jury's verdict, established the appellant was a seventeen year old Mexican male. The deceased was a 38 year old homosexual white male. Appellant and the deceased met for the first time on the evening of January 28, 1980, and entered into a relationship. After drinking and dancing together at two gay bars the appellant and the deceased were seen leaving together between 12:00 a.m.—1:00 a.m. The deceased was discovered by his maid on January 29, 1980, at approximately 9:00 a.m. He was found in bed partially covered with a sheet. The cause of death was strangulation. There was no evidence of a forced entry, nor was there any evidence of a struggle. The apartment was 'neat and tidy', although several dresser drawers were partially opened. The deceased was wearing two gold chains, a bracelet, and a watch when his body was discovered. There was testimony to the effect that the jewelry appeared to be valuable. No money was found in the apartment and testimony established that the deceased had cashed a payroll check for $110.97 at noon the day before the homicide was discovered. Appellant's confession is, at best, ambiguous as to whether he took a checkbook; none was found in the apartment, vehicle, or in the possession of the appellant. There was no evidence to indicate that any of the deceased's checks were negotiated after his death. The only property definitely missing was the deceased's car.

When appellant was arrested he gave the police a statement which led to the discovery of the vehicle. The vehicle was found in Juarez, Mexico, locked, with the keys in the ashtray. Among the property found in the vehicle was a jewelry box containing assorted jewelry. The box was found partially entangled in a shirt on the left rear floorboard. No one ever identified the jewelry box or its contents as being the property of the deceased. Prior to trial the jewelry box was given to the deceased's employer to return to the family of the deceased. Thus the jewelry box was not presented at trial for anyone to identify.

The appellant's confession, summarized, states that the deceased woke him in the middle of the night and tried to get the appellant to commit sodomy on the deceased. Appellant claims that he had an agreement with the deceased whereby the deceased would "be the woman" and the appellant would "be the man".

The deceased's violation of this agreement angered the drunk appellant and appellant strangled the deceased. In fear, and wanting to get out of the apartment, appellant grabbed the car keys and fled. The appellant admits an intentional killing and an intentional taking of the deceased's vehicle; however he makes clear that he acted out of anger and fear, and that the taking of the car was incidental. He specifically denies taking any other property. The medical and fingerprint testimony comported with the appellant's confession. His fingerprints were found on a glass on the nightstand in the deceased's bedroom, as well as on the rearview mirror of the vehicle.

When reviewing sufficiency of the evidence this Court is bound to review the evidence in the light most favorable to the jury's verdict. We must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Griffin v. State*, 614 S.W.2d 155 (Tex.Cr.App.1981). Additionally, under our state voucher rule, the State is bound to disprove, beyond a reasonable doubt, exculpatory evidence contained within a

---

course of committing the offense of Robbery, to wit: the said defendant on or about the 29th day of January, 1980, ..., did then and there unlawfully, intentionally and knowingly, while in the course of committing theft and with the intent to obtain property of

[decedent], to wit: a 1977 Chevrolet Station Wagon, without the effective consent of the [decedent], and with intent to deprive [decedent] of said property, did then and there intentionally and knowingly cause bodily injury to [decedent] by strangling [decedent].

statement offered by the State.[3] *Palafox v. State*, 608 S.W.2d S.W.2d 177 (Tex.Cr. App.1980); *Davis v. State*, 474 S.W.2d 466 (Tex.Cr.App.1971); see also, *Rogers v. State*, 687 S.W.2d 337 (Tex.Cr.App.1985).

■ In order for the State to obtain a conviction for capital murder under V.T.C. A. Penal Code, § 19.03(a)(2), it must prove that the appellant intentionally and knowingly killed the deceased in the course of committing certain delineated felonies, in this instance, robbery. The assaultive act which causes the death of an individual must be intentional. Furthermore, under the Penal Code's definition of robbery, see V.T.C.A. Penal Code, § 29.02, an assault which occurs in the course of committing a theft must be committed with the intent to obtain or maintain control of property. This Court has previously held that the term "in the course of committing" as used in the capital murder statute has the same meaning as the term used and defined in the robbery statute. *Riles v. State*, 595 S.W.2d 858 (Tex.Cr.App.1980); V.T.C.A. Penal Code, § 29.01(1). § 29.01(1) defines the term 'in the course of committing theft' as "conduct which occurs in an attempt to commit, during the commission, or in immediate flight after the commission of..". The State, in order to obtain a conviction, was bound to prove, beyond a reasonable doubt, that appellant committed the murder during the commission of a robbery. Since the State alleged the same assaultive conduct for both the murder and the robbery, it had to prove that the appellant intentionally strangled the deceased *with the intent to obtain control of the deceased's property.*[4] A killing and unrelated taking of property do not constitute capital murder under 19.03(a)(2): the State must prove a nexus between the murder and the theft, i.e. that the murder occurred in order to facilitate the taking of the property.[5] *O'Pry v. State*, 642 S.W.2d 748, (Tex.Cr. App.1982); *Autry v. State*, 626 S.W.2d 758 (Tex.Cr.App.1982); *Cannon v. State*, 691 S.W.2d 664 (Tex.Cr.App.1985); see also, *Cruz v. State*, 629 S.W.2d 852 (Tex.Cr.App. 1982, rev. ref'd.)

■ The State, in its case in chief, offered the appellant's confession in its entirety. The confession denies that the murder occurred in order to facilitate the theft. In fact, according to the appellant's confession *no robbery occurred.* According to his confession, the assaultive conduct occurred out of anger and fear, not in order to "obtain and maintain control of the deceased's car" as alleged in the indictment. Under this Court's previous holdings the State was bound by these statements. In order to convict appellant of capital murder, the State had to disprove, beyond a reasonable doubt, appellant's assertion that he killed the deceased out of fear and anger. This the State failed to do.

■ In what appears to have been an attempt to disprove the exculpatory statements contained in the confession, the State attempted to show that other property was missing. While the maid testified that the deceased normally kept a jewelry box in his dresser drawer, the jewelry box found in the deceased's vehicle was never identified as being the deceased's jewelry box; moreover no one ever identified the contents of the jewelry box to establish if any jewelry was missing, or if any of it belonged to the deceased.

The State further argues that no money was found in the deceased's apartment even though he had been paid $110.87 the

---

3. The dissent is precisely correct in its observation that the voucher rule has been widely condemned as archaic, irrational, and destructive of the truth-gathering process. It is also correct in its assessment of the *future* effect of the new rules of criminal evidence as promulgated by this Court, *effective September 1, 1986.* In the instant case, the appellant is entitled to rely on *existing* law, however, as we are mindful that "In practice, such trifles as contradictions in principle are easily set aside; the faculty of ignoring them makes the practical man." Hen-

ry Adams, *The Education of Henry Adams,* (1907), 3.

4. All emphasis supplied by the writer of this opinion unless otherwise indicated.

5. This is not to be construed as a limitation of this Court's previous holdings that a theft that occurs after the commission of a homicide is sufficient to prove a capital murder. See *Fierro v. State,* 706 S.W.2d 310 (Tex.Cr.App.1986).

morning preceeding the murder. To conclude that the appellant had stolen cash from the deceased would require rank speculation on the part of this Court. The record is clear that the deceased cashed his check at noon on January 28, 1980. What bills he may have paid, other cash outlays that may have occurred prior to his death, or how much money he may have spent during the evening buying drinks for appellant and himself is unknown.

Finally, the remaining facts and circumstances developed at trial are inconsistent with the State's theory of the case and fail to disprove the exculpatory matter contained in appellant's confession. If appellant killed the deceased to steal his car, why did he then abandon the locked vehicle? If the appellant killed the deceased to obtain property, why did he not steal the jewelry found on the deceased's person? The jewelry box, upon which the State places so much emphasis, was found in the locked vehicle, containing jewelry. If appellant placed the jewelry box in the deceased's car, why did he leave it, containing jewelry, in the car? The record is devoid of any explanation for these apparent inconsistencies, save and except the appellant's explanation.

This case is clearly controlled by this court's decision in *Palafox*, supra. That case also involved a capital murder conviction. The defendant there admitted killing the deceased, who was his ex-father-in-law. In his confession, the defendant stated that, *after* the killing, he decided to ransack the house and take some property in order to make it appear as if the motive for the killing had been burglary. This Court reversed the conviction, holding that the State had failed to disprove, beyond a reasonable doubt, the exculpatory matter contained within the defendant's confession. Like *Palafox*, supra, the evidence in this case supports the appellant's confession and the State has failed to come forward with any evidence tending to discredit the appellant's version of the offense.

The judgment is reversed and a judgment of acquittal is ordered.

WHITE, J., dissents.

CLINTON, Judge, concurring.

In *Fierro v. State*, 706 S.W.2d 310 (Tex. Cr.App.1986), upon which the dissent so heavily relies, the facts present a classic case of hijacking a taxicab at an early morning hour by shooting its driver. With a companion in the front passenger seat and the defendant in the back, when they neared a stated destination defendant yelled "stop," and as the cab driver turned defendant shot him in the back of the head. Taking the wheel, defendant drove to a park, removed the driver and dragged him away, *shot him again* and stole his wallet, watch and jacket, and then fled in the cab.

After surveying pertinent decisions the Court pointed out:

"The fact that there was no prior discussion of robbery and no indication of an intent to commit robbery mentioned in the confession is not controlling. It is true there was no evidence that appellant demanded of the victim money or property prior to shooting him, but a verbal demand is not the talisman of an intent to steal. Such intent may be inferred from actions or conduct."

Accordingly, the Court held the evidence sufficient "for a rational trier of facts to find all the essential elements of the offense *beyond a reasonable doubt.*"[1] That is, Fierro killed the cab driver in the course of committing or attempting to commit robbery within the contemplation of V.T.C.A. Penal Code, § 19.03(a)(2).

In the instant cause, however, no rational trier of facts can find *beyond a reasonable doubt* from all the evidence that appellant killed the deceased in the course of committing robbery. After being plied with liquor and allowing himself to be sodomized by deceased, appellant fell asleep; two or three hours later, at about 5:00 a.m., the deceased awakened him, gave him more to drink and wanted him to perform fellatio. Appellant described their respective moves

---

1. All emphasis is mine throughout unless otherwise indicated.

just before the colloquy reported in the dissenting opinion, *viz:*

> "Yes, he grabbed my head and then I said well, what's wrong with you, and he said no, just a little while, and I told him 'No, we had an agreement', and then I got up and he grabbed my hand and I grabbed my shirt.
>
> \* \* \* \* \* \*
>
> Well, the bed was like this and he tried to do that and I sat down on the bed...."

Immediately after the dialogue quoted in the dissenting opinion we find the following:

> "M. You didn't take any money, just the keys, are you telling me the truth?
>
> Because they're contradicting this, they say that he is missing some money, that's why I'm asking, I know you have told me the truth because I have proof. You didn't take any money?
>
> E. No, I just took his checkbook, when I took out the keys the checkbook fell out. What good was that, *the only thing I wanted to do was get out and....*" [2]

So appellant took the keys, knowing that the keys to the stationwagon were on the ring, got in the stationwagon and *"just kept driving around,"* even taking the wrong way on a one way street "because [he] was scared;" he then *"got control of [himself] and took off to Juarez."*

Since those statements of fact contained in his confession are undisputed, there was no conflict for this jury to resolve nor other evidence against which the jury may weigh them. Nevertheless, the dissenting opinion finds such undisputed facts "support an inference.... that appellant murdered the deceased with intent to obtain and maintain control of the property." Of course, there are other facts of the matter set out in the opinion of the Court that bear on the issue of sufficiency of the evidence. Considering all the evidence in the manner required, in my best judgment a rational trier of fact could not find that the State proved every element of the offense alleged beyond a

reasonable doubt—that is, to a "subjective state of near certitude," *Jackson v. Virginia,* 443 U.S. 307, 316, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560 (1979).

Accordingly, I join the opinion of the Court and its order reforming the judgment to show an acquittal of capital murder.

ONION, Presiding Judge, dissenting.

I joined in the dissenting opinion by Judge W.C. Davis, but I write to point out additionally facts to support his conclusions.

The majority writes:

> "The appellant admits an intentional killing and an intentional taking of the deceased's vehicle; however he makes clear that he acted out of anger and fear, and that the taking of the car was incidental."

This was no naive 17-year-old boy who was seduced by a 38-year-old male homosexual. In his confession appellant admitted he skipped school and had been drinking all day. He went to the Apartment Bar about 7:30 p.m. on the night in question, a place he knew homosexuals frequented. He played pool with the bartender and left because he "ran out of money" and wanted to get some more, hopefully from friends. He returned shortly thereafter to the bar without money and was there when the deceased and another man came in. The deceased gave appellant money for the juke box and began to buy the appellant drinks for appellant was without money. They danced together and the deceased kissed and hugged the appellant. The deceased told appellant he had once been "married" to a man, and that appellant was going to be his husband "tomorrow." According to the appellant's confession, the deceased invited him to go with him to the Diamond Bar so the deceased could cash a check. Appellant knew the Diamond Bar was "for gay people." They drove there in appellant's stationwagon. At the Diamond Bar appellant saw a "gay" friend of his and other homosexuals. While there and

---

**2.** Ellipsis by court reporter to indicate an interruption by the officer questioning appellant.

while drinking, the deceased asked the appellant if he wanted to go to the deceased's apartment so the appellant could make love to the deceased, and the appellant agreed. They left about midnight and drove again in the stationwagon to the deceased's apartment. They drank another drink, undressed, and the deceased tried to "suck" appellant, but appellant related he was drunk and couldn't get an erection. Appellant fell asleep, and after two or three hours the deceased awakened him and wanted appellant to "suck" him (the deceased). Appellant stated he "got angry at what he told me and ... And like he told me that I was going to be the man and he was going to be the woman." When asked by the officer during the taping of the confession "And, did he force you?" the appellant replied, "No, but...." Later he related the deceased grabbed his head and he said, "No, we had an agreement." Appellant got up and out of bed. The deceased grabbed his arm "and wanted to" and appellant got "angry." Appellant then began to strangle the deceased with a shirt, and the deceased "didn't try to defend himself." [1] Appellant continued to tighten the shirt, and then turned the deceased face down and covered the deceased with a blanket. Appellant dressed and got the car keys from the deceased's pants pockets, and when he did, the checkbook fell out. Appellant denied he wanted "that," but the checkbook was never found.

Appellant admitted that he took the stationwagon, but did he use it just to get away from the dead man or just to get home? No, he drove the stationwagon across the international border to Juarez, and after awhile he picked up a friend, Marcos, and then they drove around Juarez. Appellant, who had no money of his own the night before and denied taking money from the deceased, bought meat at a market to eat. Later in the afternoon appellant stated he abandoned the stationwagon in Juarez, leaving the keys in the ashtray, and returned to his home in El Paso. Interestingly enough, he related in

his confession that his uncle had come to get him, several days later, to "go to the Judicial in Juarez" because he had been accused of driving a vehicle and running over a person in Juarez. It is true that the confession and record do not show when this occurred, but the "Judicial in Juarez" was looking for appellant three days after he had been driving the deceased's stationwagon in Juarez. Appellant may have other reasons for abandoning the stationwagon other than to prevent his connection with the murder, which is reason enough.

Here the "broke" appellant goes to a bar he knows is frequented by homosexuals. He meets the deceased who buys him drinks, dances, kisses and hugs the appellant. He willingly goes with the deceased to another homosexual bar so deceased can cash a check. Then appellant willingly goes to the deceased's apartment in the stationwagon. The agreed purpose is for appellant to make "love" to the deceased. Their first effort is a failure because appellant is drunk. When awakened several hours later, appellant is "angry" because the deceased asked him to change roles. Appellant gets out of bed and strangles the deceased with a shirt while the deceased does not try to defend himself. After the deceased is turned upside down, the appellant goes through the deceased's pants pockets and takes the car keys. He takes the stationwagon. Does he do it in fear in his attempt to escape from a dead man and get home, or does he take it to appropriate it to his own use? His actions speak louder than words. He takes the vehicle, not home but, across the international border and drives it for the larger part of the day before abandoning the vehicle.

In light of the confession and the other evidence in the record, any rational trier of the facts could have found that the State proved the element of the offense alleged beyond a reasonable doubt. We still view the evidence in the light most favorable to the jury's verdict, don't we?

I dissent.

---

1. It is not logical that a 38-year-old man who had just asked appellant to engage in a sexual act, would allow himself to be strangled without "defending himself," unless he was too drunk to resist or already unconscious.

**W.C. DAVIS, Judge, dissenting.**

The majority substitutes its own interpretation of given facts for another rational interpretation presented by the facts and embraced by the jury. By its view the majority finds part of appellant's confession to be exculpatory, when the confession on its face supports the jury's verdict and is not exculpatory. For this usurpation of the jury's role I dissent.

In his confession appellant said he got angry with the deceased when the deceased tried to get appellant to commit sodomy on the deceased. Appellant refused to do so and started to get dressed. He said:

E: ... I sat down on the bed looking for my pants and he grabbed my arm and wanted to, and well drunk as I was, I got angry.

M: Okay, but what I want to know more or less if he wanted to force you into a sexual act that wasn't ... that's sodomy, when he wanted to suck you or for you to suck him, do the same for him. You got angry, and you got your shirt, okay, and you wrapped it around him from the front or from behind?

E: From in front.

M: In the front and what did he do, did he turn around?

E: No, he didn't try to defend himself.

M: He didn't try to defend himself and you tightened the shirt around him until when? Until you knew what?

E: I thought that he ... I heard him still breathing.

M: When you let go of him?

E: Yes and I quickly left.

M: Okay and then.

E: And then I covered him with a blanket.

M: You covered him, what position was he in, face down or face up ... I mean facing up, turned towards the ceiling, or ...

E: He was falling off the bed and I turned him around, I got him like this and I turned him around.

M: In other words, when you strangled him with your shirt, he was facing up and you turned him face down, upside down, and then you covered him?

E: Yes sir.

M: You got dressed, okay, when you got dressed, what did you do?

E: I got the keys.

M: Where did he have the keys?

E: In his pants pockets.

M: Where were the pants?

E: What was it that was there ... I don't know it was a bundle or something ... I don't remember.

M: A bundle of clothing?

E: I think so.

M: And you just threw them.

E: I just left them like that and got his keys, those were the only things I got.

The majority characterizes this as exculpatory because it shows that "[i]n fear, and wanting to get out of the apartment, appellant grabbed the car keys and fled." I disagree. The facts shown by appellant's confession are that appellant got angry, strangled the deceased, specifically searched for and found the keys he knew were for the car, and left, taking the car. Contrary to the majority's conclusion, this evidence is not exculpatory. The confession shows a murder and an immediate taking of the deceased's keys and automobile. These facts are no different than those in *Fierro v. State*, 706 S.W.2d 310 (Tex.Cr.App.1986) in which a coldblooded murder and somewhat belated theft were found sufficient to support the jury's verdict. In *Fierro* the defendant shot a taxi driver as the driver drove the defendant to a requested location. The defendant then drove the cab to a park, dragged the taxi driver from the car, and took several items from him.

Appellant may argue that the facts permit an inference that the murder and immediate theft of the automobile were unrelated in the sense that he did not murder with an intent to obtain or maintain control of the property. However, the facts themselves, as related by appellant, also support an inference that appellant's actions were that he murdered the deceased with intent

to obtain and maintain control of the property. The facts show a murder and a very specific and immediate taking of property. Where two inferences are possible from a set of facts, it is the jury, not this Court, who decides which inference the facts support.

The role of the jury is " 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weighter (sic) of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.' " *Combs v. State*, 643 S.W.2d 709, 717 (Tex.Cr.App.1982) quoting *Jackson v. Virginia*, 443 U.S. 307, 318–319, 99 S.Ct. 2781, 2788–2789, 61 L.Ed.2d 560 (1979) (emphasis in original).

The pertinent part of appellant's confession at best permits two inferences: (1) that appellant committed murder in the course of committing robbery, cf. *Fierro*, supra; and (2) appellant's theft of the automobile was unrelated to the murder.[1] The former inference is not exculpatory. Since the confession supports exactly this non-exculpatory interpretation, the "Palafox rule" is not applicable. The State did not need to disprove portions of the confession.

We note further that this "voucher rule" set forth in *Palafox v. State*, 608 S.W.2d 177 (Tex.Cr.App.1980), "widely condemned as archaic, irrational, and destructive of the truth-gathering process", seems to be abolished by the soon-to-be-effective Texas Rules of Criminal Evidence. See rule 607. The rationale behind the voucher rule is effectively destroyed by Rule 607. See also *Palafox*, supra, at 183–184, Dally, J., dissenting.

Because the majority imposes its own view to find the confession exculpatory when an equally plausible inference supports a non-exculpatory view of the confes-

sion, and in so doing usurps the jury's role as trier of fact and weigher of the evidence, I dissent.

ONION, P.J., and TOM G. DAVIS and WHITE, JJ., join this dissent.

## ON STATE'S MOTION FOR REHEARING

McCORMICK, Judge, dissenting.

On original submission, a majority, of which I was a member, held that the State had failed to disprove appellant's exculpatory statements contained in his confession, and that, under this Court's prior decision of *Palafox v. State*, 608 S.W.2d 177 (Tex. Cr.App.1980), appellant's conviction should be reversed and an acquittal ordered. Upon further consideration, I am now convinced that the State did in fact meet its burden and that the evidence is sufficient to support the conviction.

At trial, the following special instruction was given to the jury:

"You are further instructed that if, from the testimony and evidence presented, you find beyond a reasonable doubt that the 1977 Chevrolet station wagon was taken from the said William Morris by the defendant, Efren Castro Ibanez *as an afterthought*, then you will find the defendant, Efren Castro Ibanez, not guilty of the offense of capital murder and you will consider whether the defendant, Efren Castro Ibanez, is guilty of the lesser and included offenses of murder or voluntary manslaughter.

The evidence, which has been reviewed in previous opinions, both majority and dissenting, when combined with the charge given, lead me to conclude that Presiding Judge Onion was correct when he concluded, "In light of the confession and the other evidence in the record, any rational trier of the facts could have found that the State proved the element of the offense alleged beyond a reasonable doubt."

---

1. The majority tries to make much of the fact that appellant later abandoned the automobile. We do not find it unusual or uncommon for a criminal to rid himself of things which link him to a murder. The subsequent abandonment does not strengthen the majority's erroneous conclusion.

Therefore, I must respectfully dissent to the overruling of the State's Motion for Rehearing.

ONION, P.J., W.C. DAVIS and WHITE, JJ., join in this dissent.