**Opinion issued August 20, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00062-CR

————————————

## TRAVIS TERRELL LYONS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 180th District Court
Harris County, Texas
Trial Court Case No. 1235888

## MEMORANDUM OPINION

A jury convicted appellant, Travis Terrell Lyons, of capital murder.[1]  The

State elected not to pursue the death penalty, and the trial court assessed

appellant's punishment at life in prison.  In a single issue, appellant argues that the

---

[1]  *See* TEX. PENAL CODE ANN. § 19.03(a)(2) (Vernon 2011).

evidence was insufficient to support his conviction because the State failed to prove that appellant shot Ernest Steadman, the complainant, in an effort to obtain or maintain control of Steadman's property, and thus the State failed to prove the necessary nexus between the murder and the robbery.

We affirm.

### Background

Appellant was indicted for the offense of capital murder for the shooting death of the complainant, Ernest Steadman, allegedly committed in the course of committing or attempting to commit a robbery.

At trial, Steadman's girlfriend, Tiffany Burns, testified that on the day of the shooting she, her mother, and Steadman were all in their apartment. Steadman answered a knock on the door, stepped outside, and shut the door behind him. Burns did not see who had knocked, but she could tell something was wrong because "immediately the conversation got loud." She did not recognize the other person's voice, but she heard arguing, and she heard someone saying, "I know you have something in there. Let me in." Burns testified that Steadman "was trying to convince the person that there wasn't anything for him in the home," and, in response, she heard "feet scuffling, some sort of something going on." At some point, Burns locked the front door because she could tell the person outside wanted "to come in and take something from the house." After she locked the door, the

2

man outside said, "If there ain't nothing in there, then why are they locking the door?" followed by several gunshots.

Keaune Little, who also went by the name "Red," met appellant through a mutual friend, Shaun. Little also knew Steadman, who went by the name "White Boy," and had bought marijuana and cigarettes from him. Little testified that on the day of the shooting appellant and two other men he did not know came to his apartment. Appellant wanted Little to introduce him to Steadman, who lived in a nearby apartment, and to knock on Steadman's door so that appellant could get drugs. In the course of this conversation, appellant told Little, "If he don't cooperate, then I am going to have to lay him down." Little did not go with appellant to Steadman's apartment because his girlfriend told him not to come back home if he left the apartment and because, after he heard appellant's statement, "that made [him] not want to leave the house anyway." Appellant and the other men left Little's apartment, and, approximately five minutes later, Little heard several gunshots. Little stepped outside and saw that Steadman had been shot and was lying in a pool of blood. Little returned to his apartment and did not see appellant again.

Cameron Rainer testified that he was with appellant on the day of the shooting. He stated that he and his friend, Brandon Walton, were sitting outside their apartment discussing their lack of money. Appellant walked up and heard

3

them talking and told them, "Well, we can go hit a lick," which meant taking money from someone else. Rainer and Walton agreed. Rainer testified that appellant had a semiautomatic, .40 caliber Millennium Pro handgun, and he told Rainer and Walton that all they needed to do was "just be there" because they were "bigger" and would "scare him." In return, appellant told them he would give them some of the money. Rainer testified that they arrived at Steadman's apartment complex and went to the apartment of a man named Shaun. Shaun went with them to Little's apartment because appellant wanted Little "[t]o . . . set up a lick." Rainer testified that "setting up a lick," or robbery, involved "calling the person . . . knowing the person." However, Little did not agree to help appellant, so the men left Little's apartment and ran into Charles Obey, whom appellant introduced as "B.D." Rainer testified that appellant asked B.D. "about a lick" and that B.D. told appellant, "[Y]ou got a white boy around the corner . . . selling drugs." Rainer testified that appellant wanted to take money and drugs from the person selling drugs and told B.D., "Let's go." B.D. led them around the corner to Steadman's apartment, and appellant asked B.D. to knock because he knew Steadman and appellant did not. B.D. knocked while Rainer, Walton, and Shaun hid and appellant pretended to knock on a different door.

Rainer testified that Steadman opened the door and stepped outside, and, at that point, everything happened quickly. He testified that "they started talking to

4

[Steadman] and B.D. had, like, roughed him up" trying to pin Steadman against the wall. Appellant then "pulled out the gun" and asked Steadman, "Where's it at?" referring to the money or drugs they believed Steadman had. Steadman told appellant that he did not have anything and held his hands out in front of himself. Rainer heard someone lock the door from the inside. Appellant asked, "What they going to do? They going to call the cops or something[?]," and Steadman answered, "Maybe." Appellant then said, "Wrong answer," and he shot Steadman several times. Rainer was surprised that appellant shot Steadman because he thought they were just there to steal from him. After the shooting, he, Walton, Shaun, and appellant all ran back to Shaun's car and drove away. Appellant changed his clothes because they had blood on them, and he bragged to others about the shooting, saying that he had "done some pretty work." He also threatened to "shoot up" Rainer and Walton's apartment if anyone "talked." Rainer took this as a threat and was reluctant to talk to police about the shooting. Eventually, Rainer was arrested and charged with capital murder, but he pleaded guilty to aggravated robbery in exchange for testifying at appellant's trial.

Brandon Walton also testified, providing an account of the events on the day of the shooting that was similar to Rainer's. He testified that he and Rainer agreed to help appellant commit a robbery to get some money. He testified that they stopped at Little's apartment before the group met up with B.D. and proceeded to

5

Steadman's apartment. Walton testified that appellant demanded money or drugs from Steadman and threatened Steadman with a gun. When Steadman said he did not have anything and someone inside his apartment locked the door, appellant asked if the people inside were calling the cops, and Steadman answered, "Probably." At that point, appellant shot Steadman several times. Like Rainer, Walton was surprised by the shooting. He was also charged with capital murder, but he pleaded guilty to aggravated robbery in exchange for testifying at appellant's trial.

The State also introduced appellant's statement to police, in which appellant admitted that he was at the crime scene with a gun and that he knew a robbery was going to occur. The jury found appellant guilty of capital murder, and the trial court assessed his punishment at imprisonment for life.

## Sufficiency of the Evidence

In his sole issue, appellant argues that the evidence was insufficient to support his conviction for capital murder.

### A. Standard of Review

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979);

*Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011) (holding that *Jackson* standard is only standard to use when determining sufficiency of evidence). The jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008). We may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We afford almost complete deference to the jury's determinations of credibility. *See Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). We resolve any inconsistencies in the evidence in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); *see also Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) ("When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination.").

## B.     Elements of Capital Murder

A person commits murder if he intentionally or knowingly causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1) (Vernon 2011). A person commits capital murder if the murder is committed in the course of committing or attempting to commit one of the statutorily-enumerated offenses, including robbery. *Id.* § 19.03(a)(2) (Vernon 2011).

A person commits robbery if, in the course of committing theft and with the intent to obtain or maintain control of the property, he intentionally, knowingly, or recklessly causes bodily injury to another or intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. *Id.* § 29.02(a)(1)–(2) (Vernon 2011). Theft is the unlawful appropriation of property with the intent to deprive the owner of the property. *Id.* § 31.03 (Vernon 2011).

For purposes of both the capital murder statute and the robbery statute, "in the course of committing" is defined as "conduct occurring in an attempt to commit, during the commission, or in immediate flight after the attempt or commission" of the offense. *See id.* § 29.01(1) (Vernon 2011) (providing definition in context of robbery); *Ibanez v. State*, 749 S.W.2d 804, 807 (Tex. Crim. App. 1986) (holding that nexus requirement for capital murder involving murder in course of robbery is same as nexus requirement between assault and theft for offense of robbery).

The State must prove a nexus between the murder and the aggravating offense—here, robbery. *See Cooper v. State*, 67 S.W.3d 221, 223 (Tex. Crim. App. 2002); *Ibanez*, 749 S.W.2d at 807. Thus, the State must show that, while attempting to commit, committing, or fleeing from the commission of the robbery, appellant killed Steadman to facilitate the taking of the property. *See Ibanez*, 749 S.W.2d at 807. The intent to rob must, therefore, be formed at or before the time

8

of the murder. *Herrin v. State*, 125 S.W.3d 436, 441 (Tex. Crim. App. 2002). However, it is not necessary for the State to prove that appellant completed the theft in order to establish the underlying offense of robbery or attempted robbery; rather, the jury may have inferred the intent to rob from the circumstantial evidence, including appellant's assaultive conduct. *See Young v. State*, 283 S.W.3d 854, 862 (Tex. Crim. App. 2009); *see also Bustamante v. State*, 106 S.W.3d 738, 740 (Tex. Crim. App. 2003) ("While no completed theft occurred, proof of a completed theft is not required to establish the underlying offense of robbery or attempted robbery.").

## C.    Sufficiency of the Evidence of Capital Murder

Here, there was direct evidence from appellant's own confession and the testimony of both Rainer and Walton that appellant expected a robbery to occur at the time of the shooting. Rainer and Walton both testified that appellant planned to rob Steadman of money or drugs before they arrived outside Steadman's apartment and that appellant sought help in committing the robbery from them, Little, and B.D. After Steadman answered the door, appellant demanded that Steadman give him drugs or money, held Steadman at gun point, and eventually shot Steadman multiple times. Rainer and Walton were both surprised by the shooting because they believed they were only there to scare Steadman during the robbery. Appellant told Little before the robbery and shooting that if Steadman did not

9

cooperate, he would "lay him down," and after the shooting appellant bragged that he had "done some pretty work."

This is sufficient evidence to support an inference that appellant murdered Steadman in the course of attempting to commit a robbery. *See Young*, 283 S.W.3d at 862 (holding that "assaultive conduct, the gravamen of robbery," was demonstrated by evidence that appellant held complainant at gunpoint, made multiple demands for money, forced complainant behind counter, and fired shots at complainant in response to his apparent refusal to give up money; and thus, evidence was sufficient to support jury's inference that appellant intentionally committed murder in course of committing or attempting to commit robbery "based upon the combined and cumulative force of all the evidence"). We conclude that the evidence was sufficient for the jury to conclude that while attempting to commit the robbery, appellant killed Steadman to facilitate the taking of the property. *See Cooper*, 67 S.W.3d at 223.

Appellant argues that, at the time of the shooting, he had not obtained any property from Steadman, "so clearly the killing could not have been intended to *maintain* control of any property" and that he fled immediately after the shooting without obtaining or making any further attempts to obtain Steadman's property, "so the killing simply could not have been intended to *obtain* control of any property at the point it was committed." However, evidence of a completed theft

was not necessary in order to establish the underlying offense of robbery or attempted robbery. *See Young*, 283 S.W.3d at 862. As we discussed above, the evidence, including appellant's assaultive conduct, sufficiently established appellant's intent to rob Steadman. *See id.*; *see also Bustamante*, 106 S.W.3d at 740 ("While no completed theft occurred, proof of a completed theft is not required to establish the underlying offense of robbery or attempted robbery.").

Appellant also argues that both Rainer and Walton testified that they were surprised when appellant shot Steadman, "indicating that killing Steadman had not been part of the plan for the robbery." However, it was not necessary for the State to prove that appellant intended to kill Steadman at the time he planned the robbery; rather, it was the intent to rob that had to have been formed at or before the time of the murder. *See Herrin*, 125 S.W.3d at 441.

We overrule appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).

11