**Affirmed as Modified; Opinion Filed December 29, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-14-00272-CR

### VALENTIN CARUS, Appellant

### V.

### THE STATE OF TEXAS, Appellee

On Appeal from the 291st Judicial District Court
Dallas County, Texas
Trial Court Cause No. F-1263142-U

## MEMORANDUM OPINION
Before Justices Francis, Lang, and Brown
Opinion by Justice Lang

Valentin Carus appeals his jury conviction for the capital murder of Oliva Arvizu, raising six issues. In his first three issues, he asserts the evidence is insufficient to show he murdered Arvizu as a principal actor, as a party, or as a party-conspirator. In his fourth issue, he asserts the evidence is insufficient to show the murder occurred in the course of committing or attempting to commit robbery. His fifth issue asserts the trial court committed charge error by including a definition of reasonable doubt, and in his sixth issue, Carus asserts the trial court lacked jurisdiction to hear the case and render judgment because the case was not properly transferred to it from Criminal District Court Number One. We modify the judgment to reflect a deadly weapon finding and, as modified, affirm.

# I. BACKGROUND

Arvizu's body was found in a pool of blood in the living room of the house of Angelica Cruz Martinez, a friend of both Arvizu and Carus. She had been hit on the head more than twenty-one times with an object that "had a curved surface to it" and "essentially" caused the left side of her skull to "cave[] in." A walk through Martinez's house revealed a shrine to "Santa Muerte" or the "Grim Reaper," "objects typically considered weapons," including a knife, "strategically placed where they could be easily accessed," and a trash can containing a hammer, knife handle, and pepper spray package, In the driveway of Martinez's neighbor were "a metal gear," later determined to be part of a "jack stand," and a "wooden" stick covered in blood. Carus was seen by a neighbor in a struggle with Arvizu's husband near Martinez's house. He had blood spatter on his face, arms and clothes when he was arrested. Then, he was charged by indictment alleging he intentionally caused Arvizu's death by striking her in the head with an unknown object, a deadly weapon, while in the course of committing or attempting to commit robbery. The indictment was returned by a grand jury empaneled in Criminal District Court Number One, but was filed in the 291st Judicial District Court where the case was tried.

Although Carus was found covered in blood, no DNA evidence linked Carus to Arvizu's murder and no evidence suggested Arvizu or her husband were in fact robbed. However, in a videotaped confession admitted into evidence at trial and published to the jury, Carus admitted he, Martinez, and Martinez's sister-in-law, Ruth Barradas, planned to rob and murder Arvizu and her husband, Omar Zeballos. Carus explained Martinez, Arvizu, and Zeballos were "compadres," and Martinez knew they "had money" as she and Barradas had robbed them "years ago." According to Carus, the plan was for Martinez to invite Arvizu and Zeballos to her house, where Martinez, Barradas, and Carus would "attack" them. The three would then look for money in Arvizu and Zeballos's car and dispose of their bodies in a vacant lot off Interstate 30.

The morning of the murder, Carus and Barradas purchased pepper spray at a local sporting goods store. Shortly after Arvizu and Zeballos arrived at Martinez's house, Barradas sprayed Zeballos with pepper spray, and Carus hit Zeballos with a "stick." Arvizu grabbed Carus's shirt and Carus grabbed Arvizu by the hair and pushed her onto the couch. Martinez then hit Arvizu, and Carus left the house to chase Zeballos who had jumped out of a window. Carus stated he could have killed Zeballos, but did not have the "heart" to do so. He further stated he did not hit Arvizu and did not know she had been killed until after he had been arrested.

Zeballos, testifying through an interpreter, generally corroborated Carus's custodial statements, but contradicted Carus's statement that he did not hit Arvizu. According to Zeballos, Carus, on Barradas's command, struck Arvizu once with an "iron" object that had "some little teeth on it." Zeballos did not see any blood, but testified Carus hit Arvizu with such force that "her cranium, her skull [was] depressed."

The jury was authorized to convict Carus under three theories of liability, as a principal, a party, or a party-conspirator. The jury returned a general verdict of guilty. *See* TEX. PENAL CODE ANN. §§ 7.01(a), 7.02(a)(2), (b) (West 2011). The State had not sought the death penalty. Accordingly, the trial court assessed a mandatory life sentence without parole. *Id.* § 12.31(a)(2) (West Supp. 2015).

## II. JURISDICTION

Carus contends in his sixth issue that the trial court, the 291st Judicial District Court, lacked jurisdiction to hear the case and, as such the judgment is void, because the case was not transferred to its docket from Criminal District Court Number One where the case "was presented."

### A. Applicable Law

It is well-settled that a defendant has an absolute right to be tried in a court with jurisdiction over him and the subject-matter of the case  *See Saldano v. State*, 70 S.W.3d 873, 888 (Tex. Crim. App. 2002); *Nix v. State*, 65 S.W.3d 664, 668 (Tex. Crim. App. 2001).  In a felony case such as capital murder, that court is the district or criminal district court where the indictment is first filed. *See* TEX. CONST. art. V, § 12; TEX. CODE CRIM. PROC. ANN. arts. 4.05, 4.16 (West 2015); TEX. PENAL CODE ANN. § 19.03(b) (West Supp. 2015).

### B. Application of Law to Facts

Although the indictment was returned by a grand jury empaneled in Criminal District Court Number One, the record reflects the indictment was filed in the trial court that heard the case, the 291st Judicial District Court.  Accordingly, the trial court properly exercised jurisdiction over this case. *See* TEX. CODE CRIM. PROC. ANN. art. 4.05, 4.16.  We decide Carus's sixth issue against him.

## III. SUFFICIENCY OF EVIDENCE

In his first through fourth issues, Carus challenges the sufficiency of the evidence to support the conviction.  Specifically, in his first issue, he asserts the evidence is insufficient to show he murdered Arvizu as a principal actor.  In his second issue, he asserts the evidence is insufficient to show he participated in the murder as a party, and in his third issue, he challenges the sufficiency of the evidence to support a conviction as a party-conspirator.  The fourth issue asserts the evidence is insufficient to show the murder occurred in the course of committing or attempting to commit robbery.

### A. Standard of Review

In evaluating the sufficiency of the evidence to support a conviction, an appellate court applies *Jackson v. Virginia*, 443 U.S. 307 (1979) and considers all the evidence in the light most

favorable to the trial court's judgment to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013) (quoting *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011)). The jury, as the factfinder, is the sole judge of the witnesses' credibility and the weight to give the evidence. *See Garcia v. State*, 367 S.W.3d 683, 687 (Tex. Crim. App. 2012). As such, the appellate court defers to the jury's resolution of any conflicts in testimony, weight of the evidence, and inferences drawn. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Jackson*, 443 U.S. at 318-19).

## B. Applicable Law

To establish Carus committed capital murder, the State had to prove beyond a reasonable doubt, as described in the indictment, that Carus intentionally caused Arvizu's death by striking her head with a deadly weapon, while in the course of committing or attempting to commit robbery. *See* TEX. PENAL CODE ANN. §§ 19.02(b)(1) (West 2011), 19.03(a)(2). In other words, the State was required to prove the murder occurred to facilitate the robbery. *See Ibanez v. State*, 749 S.W.2d 804, 807 (Tex. Crim. App. 1986). The charge authorized the jury to convict Carus under three theories of liability, that is, as a principal, party, or party-conspirator. Accordingly, the State could establish Carus's guilt by showing (1) Carus committed the offense by his own conduct; (2) acting with the intent to promote or assist in the commission of the offense, Carus solicited, encouraged directed, aided, or attempted to aid Martinez or Barradas in committing the offense; or (3) Carus conspired with Martinez and Barradas to commit robbery, and in furtherance of the robbery, Martinez or Barradas committed murder, which Carus should have anticipated. *See* TEX. PENAL CODE ANN. §§ 7.01(a), 7.02(a)(2), § 7.02(b). When, as here, the jury charge contains more than one theory of liability and the jury returns a general verdict, the verdict will be upheld so long as sufficient evidence exists to support the conviction under any

one of the theories submitted. *See Anderson v. State*, 416 S.W.3d 884, 889 (Tex. Crim. App. 2013).

## C. Application of Law to Facts

Although Carus challenges the sufficiency of the evidence as to each theory of liability, we need not address all three as we conclude the evidence is sufficient to support Carus's guilt under the law of parties. *See Anderson*, 416 S.W.3d at 889.

Carus acknowledges he "formulated a plan" with Martinez and Barradas that involved having Zeballos and Arvizu over for lunch at Martinez's house, spraying them with pepper spray once they arrived, "knock[ing them] out," "rob[bing]" them, and then disposing of their bodies. He contends, however, when he left Martinez's house to chase Zeballos, his actions became "separate" from Martinez and Barradas's actions and "did nothing to solicit, encourage, direct, aid or attempt to aid [Martinez] and [Barradas] to kill [Arvizu]." In making this argument, Carus ignores his own custodial statement that the morning of the murder, he and Barradas purchased pepper spray to use on Arvizu and Zeballos and, prior to chasing Zeballos, he hit Zeballos with a "stick," grabbed Arvizu by the hair, and pushed her into the couch where Martinez hit her. From this evidence alone, a rational jury could have found beyond a reasonable doubt that Carus, acting with intent to promote or assist in the commission of the capital murder, encouraged or aided Martinez and Barradas in committing the offense. *See* TEX. PENAL CODE ANN. § 7.02(a)(2); *Trenor v. State*, 333 S.W.3d 799, 808-09 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (jury could reasonably infer appellant acted with intent to promote or assist her husband in murdering her two-year old daughter by, at husband's direction, filling bathtub with water in which he repeatedly submerged child, hitting child with belt, and failing to stop husband from physically abusing child). Moreover, the fact that Carus left the house to chase Zeballos does not negate Carus's own admission that he, Martinez, and Barradas planned to kill and rob Arvizu

and Zeballos.  In fact, his leaving the house to chase Zeballos was consistent with the plan to kill and rob *both* Arvizu and Zeballos.  *See Michel v. State*, 834 S.W.2d 64, 67 (Tex. App.—Dallas 1992, no pet.) ("A conviction under the law of parties requires a showing that, at the time of the offense, the parties were acting together, each contributing to their common purpose.").  Finally, although he denied hitting Arvizu, the jury, as the fact finder, was free to disbelieve this portion of Carus's confession in favor of Zeballos's testimony that Carus, on Barradas's command, hit Arvizu with an "iron" object with such force that "her cranium, her skull [was] depressed."  *See Hooper*, 214 S.W.3d at 13; *Trenor*, 333 S.W.3d at 809 (noting jury free to believe or disbelieve all or part of appellant's statements).

In concluding the evidence is sufficient to support Carus's guilt as a party, we necessarily reject Carus's argument in his fourth issue that the evidence is insufficient to show Arvizu was killed in the course of a robbery or attempted robbery.  Although no evidence reflects Arvizu and Zeballos were actually robbed, the record reflects the murder was intended to facilitate the taking of money from Arvizu and Zeballos.  This was sufficient to support the robbery element of the offense.  *See Ibanez*, 749 S.W.2d at 807.  On this record, we decide Carus's second and fourth issues against him and do not address his first and third issues.  *See* TEX. R. APP. P. 47.1; *Anderson*, 416 S.W.3d at 889.

## IV. JURY CHARGE

Carus's fifth issue asserts charge error.  Carus did not complain of the jury charge at trial, but contends now that the trial court erred by including the following definition of reasonable doubt:

> It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all reasonable doubt concerning the defendant's guilt."

In arguing this issue, he recognizes that in *O'Canas v. State*, 140 S.W.3d 695, 702 (Tex. App.—Dallas 2003, pet. ref'd), we concluded that including such an instruction in a jury charge is not error. Carus disagrees with our holding, however, urging the instruction "serves to demarcate one of the boundaries of reasonable doubt" in violation of the court of criminal appeals' holding in *Paulson v. State*, 28 S.W.3d 570, 572 (Tex. Crim. App. 2000) "that the better practice is to give no definition of reasonable doubt at all to the jury." Not only have we concluded giving such an instruction is not error, but so has the court of criminal appeals. *See Woods v. State*, 152 S.W.3d 105, 115 (Tex. Crim. App. 2004). A determination of the court of criminal appeals, as the court of last resort in this state in criminal matters, is final. *See* TEX. CONST. art. V, § 5(a). Carus's fifth issue is decided against him.

## V. MODIFICATION OF JUDGMENT

Carus was found guilty of capital murder that was alleged to have been committed by striking Arvizu in the head with a deadly weapon, an unknown object. Yet, the trial court's judgment does not contain a deadly weapon finding. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(2) (West Supp. 2015) (requiring judgment contain deadly weapon finding if such finding is made). An appellate court may modify an incorrect judgment to include an erroneously omitted deadly weapon finding. *Asberry v. State*, 813 S.W.2d 526, 529-30 (Tex. App.—Dallas 1994, pet. ref'd). A verdict of capital murder includes a finding that a deadly weapon was used. *See* TEX. PENAL CODE ANN. §1.07(a)(17) (West Supp. 2015) (defining "deadly weapon" as "anything that in the manner of its use or intended use is capable of causing death or bodily injury"); *Crumpton v. State*, 301 S.W.3d 663, 664 (Tex. Crim. App. 2009). Accordingly, we modify the portion of the judgment entitled "Findings on Deadly Weapon" to reflect "Yes, not a firearm." *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993); *Asberry*, 813 S.W.2d at 531.

## VI. CONCLUSION

As modified, we affirm the trial court's judgment.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

Do Not Publish
Tex. R. App. P. 47
140272F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

VALENTIN CARUS, Appellant

No. 05-14-00272-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 291st Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-1263142-U.
Opinion delivered by Justice Lang. Justices Francis and Brown participating.

Based on the Court's opinion of this date, we **MODIFY** the portion of the trial court's judgment entitled "<u>Findings on Deadly Weapon</u>" to reflect "Yes, not a firearm."

As **MODIFIED**, we **AFFIRM** the judgment.

Judgment entered this 29th day of December, 2015.