

## IN THE
## TENTH COURT OF APPEALS

### No. 10-13-00281-CR

**MARCUS JEROME LANDRUM,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 19th District Court
McLennan County, Texas
Trial Court No. 2011-1929-C1**

## MEMORANDUM OPINION

In three issues, appellant, Marcus Jerome Landrum, challenges his capital-murder conviction for which he received a sentence of life imprisonment in the Institutional Division of the Texas Department of Criminal Justice without parole. Specifically, Landrum asserts that: (1) the trial court erred in denying his *Batson* challenge to two prospective jurors, *see generally Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986); (2) the evidence is insufficient to support his conviction;

and (3) the trial court abused its discretion by limiting the testimony of a defense expert witness. Because we disagree with each of Landrum's assertions, we affirm.

## I. APPELLANT'S *BATSON* CHALLENGES

In his first issue, appellant contends that the trial court abused its discretion by denying his *Batson* challenges to two African-American jurors—juror numbers 5 and 20—because the State's race-neutral reason for striking the jurors was insufficient.

## A. Applicable Law

In *Batson*, the United States Supreme Court held that, while a prosecutor ordinarily may exercise peremptory strikes for any reason related to his views concerning the outcome of the trial, "the Equal Protection Clause forbids the prosecutor to challenge potential jurors on account of their race." *Id.* at 89, 106 S. Ct. at 1719. A *Batson* challenge to a peremptory strike consists of three steps: (1) the opponent of the strike must establish a prima facie showing of racial discrimination; (2) the proponent of the strike must articulate a race-neutral explanation; and (3) the trial court must decide whether the opponent has proved purposeful racial discrimination. *See Purkett v. Elem*, 514 U.S. 765, 767-68, 115 S. Ct. 1769, 1770-71, 131 L. Ed. 2d (1995); *Young v. State*, 283 S.W.3d 854, 866 (Tex. Crim. App. 2009).

Once the State proffers race-neutral explanations for its peremptory strikes, the burden is on the defendant to convince the trial court that the prosecution's reasons were not race-neutral. *Ford v. State*, 1 S.W.3d 691, 693 (Tex. Crim. App. 1999). Thus, the burden of production shifts from the defendant in step one to the State in step two; but the burden of persuasion never shifts from the defendant. *Id.* The trial court's ruling in

the third step must be affirmed on appeal unless it is clearly erroneous. *Grant v. State*, 325 S.W.3d 655, 657 (Tex. Crim. App. 2010) (citing *Snyder v. Louisiana*, 552 U.S. 472, 477, 128 S. Ct. 1203, 1207-08, 170 L. Ed. 2d 175 (2008)). "Because the trial court's ruling requires an evaluation of the credibility and demeanor of prosecutors and venire members, and because this evaluation lies peculiarly within the trial court's province, we defer to the trial court in the absence of exceptional circumstances." *Id.*; *see Watkins v. State*, 245 S.W.3d 444, 448 (Tex. Crim. App. 2008) ("[A] reviewing court should examine the trial court's conclusion that a facially race-neutral explanation for a peremptory challenge is genuine, rather than a pretext, with great deference, reversing only when the conclusion is, in the view of the record as a whole, clearly erroneous.").

## B. Discussion

### 1. Juror Number 5

In response to appellant's *Batson* challenge, the prosecutor indicated to the trial court that he exercised a peremptory strike on juror number 5 because his mailing address was in Maryland, and because the prosecutor did not believe that juror number 5 would have a sense of home in the community. Specifically, the prosecutor asserted the following:

> [W]e're going to be making a lot of arguments about[,] "This is your community, this is stuff going on in your community," and if he's trans—I mean, he's, obviously, recently here if he lives—I mean recently here. He had to live here, but we just didn't feel comfortable with those arguments. No community ties, basically. I mean, he's not going to feel a sense of home to this place, and obviously, his mailing address is Maryland. We're also going to be making arguments like, "This is your police department they are attacking." Obviously, he's from Maryland.

The trial court determined that the prosecution's explanation was race-neutral and denied appellant's *Batson* challenge.

Here, appellant made a prima facie showing that the State's strike may have been racially motivated.[1]  However, the State responded to appellant's *Batson* challenge with a race-neutral reason for using a peremptory strike on juror number 5—lack of community ties based on his Maryland address.  Appellant was unable to refute the prosecution's explanation or demonstrate that the State's explanation was merely a pretext for discrimination.  *See Williams v. State*, 301 S.W.3d 675, 688 (Tex. Crim. App. 2009); *see also Ford*, 1 S.W.3d at 693.  Therefore, according great deference to the trial court's denial of appellant's *Batson* challenge, we cannot say that, based on our review of the record, the trial court's ruling is clearly erroneous.  *See Snyder*, 552 U.S. at 477, 128 S. Ct. at 1207-08; *Grant*, 325 S.W.3d at 657; *Watkins*, 245 S.W.3d at 448; *see also Robertson v. State*, No. 10-12-00076-CR, 2012 Tex. App. LEXIS 10581, at **2-3 (Tex. App.—Waco Dec. 20, 2012, no pet.) (mem. op., not designated for publication).

### 2.    Juror Number 20

With regard to juror number 20, the prosecutor argued that the juror knew one of appellant's trial attorneys—Russell Hunt Sr.  In support of his argument, the prosecutor referenced the following exchange that took place between Hunt and juror number 20 during voir dire:

---

[1] It is worth mentioning that appellant admits in his brief that the State did not seek to exercise its peremptory challenges on all of the African-Americans that were within the strike range.  Indeed, the State sought to strike four of the five African-Americans.  One of the explanations for those strikes was deemed to be insufficient by the trial court, and appellant only challenges two of the remaining three strikes exercised.

MR. HUNT:        He's doesn't care for that. I understand. Okay. Then I'm going to go to—21 is here—Number 20. I know a little bit about yourself because we both work in the ALICO building. Tell me about yourself, as far as what kind of juror you would be.

[Juror Number 20]: I would be fair, open-minded, and I guess attentive to details.

MR HUNT:        Okay. Fair, open-minded, attentive to details. I think you're a programmer, isn't that also correct?

[Juror Number 20]: Yes.

The prosecutor contended that this exchange would have led a reasonable person to conclude that Hunt and juror number 20 saw each other every workday and that they knew each other.

Hunt responded by arguing that he does not see juror number 20 every day but admitted that he and juror number 20 both work in the ALICO building. Hunt also denied knowing juror number 20's name. The prosecutor countered by arguing: "When I saw them talk, it seemed like they knew each other." In addition, the prosecutor noted that, because Hunt knew that juror number 20 was a programmer, the two must have known each other. Hunt stated that the only reason why he knew that juror number 20 was a programmer was because it was listed on juror number 20's juror-information card. Ultimately, the trial court denied appellant's *Batson* challenge with respect to juror number 20.

Once again, appellant made a prima facie showing that the State's strike may have been racially motivated. However, the State responded with a race-neutral reason for using a peremptory strike on juror number 20—based on the familiarity between

juror number 20 and Hunt. Appellant attempted to refute the State's explanation and demonstrate that the explanation was merely a pretext for discrimination.

Ultimately, the resolution of this complaint centers on an evaluation of credibility and demeanor of prosecutors, defense counsel, and venire members—an evaluation that lies within the trial court's province. *See Grant*, 325 S.W.3d at 657; *see also Watkins*, 245 S.W.3d at 447 ("The ultimate plausibility of that race-neutral explanation is to be considered as part of the third step of the analysis, in which the trial court determines whether the opponent of the strike (usually the defendant) has satisfied his burden of persuasion to establish by a preponderance of the evidence that the strike was indeed the product of the proponent's purposeful discrimination. Whether the opponent satisfies his burden to show that the proponent's facially race-neutral explanation for his strike is pre-textual, not genuine, is a question of fact for the trial court to resolve in the first instance."). Based on our review of the record, and according great deference to the trial court's ruling, we cannot say that appellant has carried his burden in demonstrating that the trial court's denial of his *Batson* challenge of juror number 20 is clearly erroneous. *See Snyder*, 552 U.S. at 477, 128 S. Ct. at 1207-08; *Grant*, 325 S.W.3d at 657; *Watkins*, 245 S.W.3d at 448; *see also Robertson*, 2012 Tex. App. ELXIS 10581, at **2-3. Accordingly, we overrule appellant's first issue.

## II. SUFFICIENCY OF THE EVIDENCE

In his second issue, appellant alleges that the evidence adduced at trial is insufficient to prove that he committed murder in the course of committing robbery.

### A. Standard of Review

In *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011), the Texas Court of Criminal Appeals expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Id.*

Our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. Furthermore, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13. Finally, it is well established that the factfinder is entitled to judge the credibility of the witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically-correct jury charge does four things: (1) accurately sets out the law; (2) is authorized by the indictment; (3) does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability; and (4) adequately describes the particular offense for which the defendant was tried. *Id.*

A person commits capital murder if he intentionally causes the death of an individual in the course of committing or attempting to commit robbery. TEX PENAL CODE ANN. §§ 19.02(b)(1), 19.03(a)(2) (West 2011 & Supp. 2013); *see Johnson v. State*, 421 S.W.3d 893, 896 (Tex. App.—Houston [14th Dist.] 2014, no pet.). A person commits robbery if, in the course of committing theft and with the intent to obtain or maintain control of the property, he intentionally, knowingly, or recklessly causes bodily injury to another or intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. TEX. PENAL CODE ANN. § 29.02(a)(1)-(2) (West 2011); *see Johnson*, 421 S.W.3d at 896. Theft is the unlawful appropriation of property with the intent to deprive the owner of the property. TEX. PENAL CODE ANN. § 31.03 (West Supp. 2013). Appropriation of property is unlawful if it is without the owner's effective consent. *Id.* § 31.03(b)(1).

With respect to section 19.03(a)(2) of the Texas Penal Code, the Court of Criminal Appeals has interpreted "'in the course of committing' an offense listed in section 19.03(a)(2) . . . as conduct occurring in an attempt to commit, during the commission, or

in the immediate flight after the attempt or commission of the offense." *Robertson v. State*, 871 S.W.2d 701, 705 (Tex. Crim. App. 1993); *see Ibanez v. State*, 749 S.W.2d 804, 807 (Tex. Crim. App. 1986) (holding that the nexus requirement for capital murder involving murder in the course of robbery is the same as the nexus requirement between assault and theft for the offense of robbery).

The State must prove a nexus between the murder and the aggravating offense— here, robbery. *See Cooper v. State*, 67 S.W.3d 221, 223 (Tex. Crim. App. 2002); *Ibanez*, 749 S.W.2d at 807. Therefore, the State must show that, while attempting to commit, committing, or fleeing from the commission of the robbery, appellant killed Gonzalez to facilitate the taking of the property. *See Ibanez*, 749 S.W.2d at 807. The intent to rob must, therefore, be formed at or before the time of the murder. *Herrin v. State*, 125 S.W.3d 436, 441 (Tex. Crim. App. 2002). However, it is not necessary for the State to prove that appellant completed the theft in order to establish the underlying offense of robbery or attempted robbery; rather, the jury may have inferred the intent to rob from the circumstantial evidence, including appellant's assaultive conduct. *See Young v. State*, 283 S.W.3d 854, 862 (Tex. Crim. App. 2009); *see also Bustamante v. State*, 106 S.W.3d 738, 740 (Tex. Crim. App. 2003) ("While no completed theft occurred, proof of a completed theft is not required to establish the underlying offense of robbery or attempted robbery.").

## B.    Discussion

On appeal, appellant argues that the State proved a murder and a theft, but it did not prove that the murder was committed with the intent to take the property.

Appellant characterizes the evidence as demonstrating a killing and an unrelated taking of property that, when combined, do not constitute capital murder under section 19.03(a)(2). *See id.* § 19.03(a)(2). We disagree.

"Proof of a culpable mental state invariably depends on circumstantial evidence." *Johnson*, 421 S.W.3d at 897 (citing *Heckert v. State*, 612 S.W.2d 549, 550 (Tex. Crim. App. [Panel Op.] 1981); *Martin v. State*, 246 S.W.3d 246, 263 (Tex. App.—[14th Dist.] 2007, no pet.)). "A culpable mental state can be inferred from the acts, words, and conduct of the accused." *Id.* (citing *Martin*, 246 S.W.3d at 263).

Here, the evidence established that Santiago Gonzalez's death was caused by twenty-six "incised and stab wounds of the head, chest, and back." Additionally, investigators discovered Gonzalez's beloved dog stabbed through the heart with an ornamental Japanese Samurai sword. Investigators also found some clothes in Gonzalez's apartment, including a jacket that contained Gonzalez's and appellant's DNA. Furthermore, it is undisputed that appellant left Gonzalez's apartment in Gonzalez's white Cadillac, which had handicap plates. Appellant asserts that the fact that he left Gonzalez's apartment in Gonzalez's white Cadillac is not enough to show that he committed murder with the intent to commit theft.

However, Keith Vaughan, a police sergeant with the Waco Police Department, described Gonzalez's apartment, the crime scene, as follows:

> The house as a whole was cluttered, for the most part, but there was not nearly the significant amount of damage and obvious violence that occurred in the living room in the rest of the house. There were areas in one of the back bedrooms where it appeared someone had gone through some of the—like the night stand and closets.

Sergeant Vaughan also stated that it appeared that someone had rummaged through Gonzalez's drawers and "pulled stuff out." Later, Sergeant Vaughan noted that investigators found an empty bank bag in one of Gonzalez's bedrooms.

Josh Cashion, a state trooper, testified that he pulled appellant over on the night in question for driving at 109 miles per hour in a 60 mile-per-hour zone. Trooper Cashion recalled that appellant was driving a white 2002 Cadillac with handicap plates and that appellant acted very strange during the traffic stop. According to Trooper Cashion, appellant wore only a very large pair of pants that exposed a part of his penis. Appellant did not wear a shirt, though the outside temperature on the night in question was in the "[m]id to high 20s." Trooper Cashion also noticed a couple of drops of blood inside the Cadillac.

Thereafter, Pearlie Mitchell, the mother of appellant's uncle's children, testified that appellant came to her house on the night in question. Mitchell recalled seeing appellant drive the Cadillac with handicap plates. She also observed a stack of money, the blade of a knife, a crack pipe, and a cigarette lighter inside the Cadillac. When Mitchell asked appellant about how he obtained the car, appellant explained that he paid $13,000 for the vehicle in Austin. Mitchell believed that to be a lie because appellant was "just barely getting a disability check," and because "[t]here is no car lot going to sell you a car with a handicap license plate. You're going to get a paper tag." Mitchell further recounted that appellant tried to use the stack of money to pay a woman to have sex with him while he was at Mitchell's house. In addition, Mitchell

stated that appellant told her the following: "If I ever get caught, I'm never getting out."

And finally, Delarontae Walker, an inmate in the McLennan County jail, noted that he had talked to appellant about this incident while they were incarcerated. According to Walker, appellant admitted that "he killed the dude with the sword and the dog with the little sword" and that he had taken $800 and the Cadillac from Gonzalez's apartment.

Based on the foregoing evidence, it was not unreasonable for the jury to infer that while attempting to commit the robbery, appellant killed Gonzalez and his dog to facilitate the taking of the property. *See* TEX. PENAL CODE ANN. §§ 19.02(b)(1), 19.03(a)(2); *Cooper*, 67 S.W.3d at 223; *Johnson*, 421 S.W.3d at 897; *see also Zimmerman v. State*, 860 S.W.2d 89, 93 (Tex. Crim. App. 1993) ("Finally, even if the facts showed that appellant robbed the decedent's body after he had already died, that would not be dispositive. If the State introduces evidence from which the jury could rationally conclude that appellant formed the intent to obtain or maintain control of the victim's property either before or during the commission of the murder, then the State 'has proven that a murder occurred in the course of robbery, although the element of appropriation occurred after the murder." (quoting *Nelson v. State*, 848 S.W.2d 126, 132 (Tex. Crim. App. 1992))). As such, we conclude that the record contains sufficient evidence to support appellant's conviction for capital murder. *See* TEX. PENAL CODE ANN. §§ 19.02(b)(1), 19.03(a)(2); *see also Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Lucio*, 351 S.W.3d at 894. We overrule appellant's second issue.

### III. THE TESTIMONY OF LANDRUM'S EXPERT WITNESS

In his third issue, appellant contends that the trial court abused its discretion by excluding expert testimony regarding homosexual homicides.

Outside the presence of the jury, appellant proffered the testimony of Anita Zannin, a teacher of crime scene and homicide investigation at Syracuse University and at a law school in Guatemala. Appellant called Zannin to testify about bloodstain-pattern analysis and theories about homosexual homicides. In arguing that the theories about homosexual homicides were relevant and probative, defense counsel argued the following:

> And we're trying to put forth the possibility. Nobody—the issue is who did it, and I think we're entitled to raise the possibility that when she looked at it, I mean, that's the first thing she said she saw. When she looked at it, "It looks like a sexually-motivated homicide, to me, without knowing anything else," just based on the literature and based on what she had seen. . . .
>
> I mean, I think it's another fact that the jury has to weigh in determining whether this individual is the one that committed that offense or whether there is somebody else that committed the offense.

After hearing the arguments of counsel and some testimony from Zannin, the trial court admitted Zannin's testimony about bloodstain-pattern analysis; however, the trial court excluded testimony about theories regarding homosexual homicides because the testimony was determined to be irrelevant and prejudicial, and because appellant did not proffer any evidence to demonstrate that the theories were a "legitimate field of inquiry." It is from this ruling that appellant complains.

On appeal, appellant contends that the trial court abused its discretion by excluding Zannin's testimony about homosexual homicides because the testimony was directly relevant to an ultimate issue: "whether this was a murder or a capital murder." Specifically, appellant argues that Zannin's testimony about homosexual homicides would have aided the jury in concluding that appellant was guilty only of the lesser-included offense of murder.

Based on our review of the record, appellant's issue and argument on appeal do not comport with his argument made at trial. As stated earlier, appellant argued in the trial court that the testimony should be admitted on the issue of identity; however, on appeal, appellant raises a new justification regarding the lesser-included offense of murder. A complaint will not be preserved if the legal basis of the complaint raised on appeal varies from the complaint made at trial. *See* TEX. R. APP. P. 33.1; *Lovill v. State*, 319 S.W.3d 687, 691-92 (Tex. Crim. App. 2009). Accordingly, because appellant's issue does not comport with the argument made at trial, this issue presents nothing for review and is overruled.

## IV. CONCLUSION

Having overruled all of Landrum's issues on appeal, we affirm.

AL SCOGGINS
Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Affirmed
Opinion delivered and filed September 11, 2014
Do not publish
[CRPM]

